497 P.2d 534

**PLANNED PARENTHOOD CENTER OF TUCSON, INC., a corporation, et al., Petitioners,**

v.

**Hon. Jack G. MARKS, Judge of the Superior Court of the State of Arizona, et al., Respondents,**

and

**D. E. Clark, M.D., et al., Amici Curiae.**

**No. 2 CA–CIV 1222.**

Court of Appeals of Arizona, Division 2.

May 30, 1972.

Rehearing Denied June 29, 1972.

Review Denied· Sept. 12, 1972.

Miller, Pitt & Feldman, P. C. by Stanley G. Feldman, Mrs. Elaine S. Pollack, Tucson, for petitioners.

Gary K. Nelson, Atty. Gen., by John O'Dowd, Asst. Atty. Gen., and Rose Silver, Pima County Atty., by John R. Neubauer,

Chief Civil Deputy County Atty., Tucson, for respondents Jack G. Marks, Rose Silver and Gary K. Nelson.

Murphy, Vinson & Hazlett by John U. Vinson, Tucson, for respondent Bloom.

Merchant, Lohse & Bloom by William A. Riordan, Tucson, for amici curiae.

HATHAWAY, Judge.

This is a petition for extraordinary relief under the rules pertaining to special actions. The Planned Parenthood Center of Tucson, Inc., is a non-profit corporation engaged in providing family planning services in Tucson. Petitioner, Jane Roe, is a resident of Pima County and appears through a fictitious name. She is an unmarried young woman who was pregnant, but who has, since becoming a petitioner herein, obtained an abortion in another state. It was represented to this court at the time of the oral argument that there were sound medical reasons for an abortion, even though possibly not necessary to save her life. She was substituted as a petitioner in place of a predecessor petitioner, Jane Doe, a pregnant young woman who also wanted an abortion, apparently in violation of the Arizona statutes, but who obtained an out-of-state abortion pending this litigation. The other petitioners are licensed medical practitioners, specializing in obstetrics and gynecology in Pima County.

Petitioners are plaintiffs in an action filed in the Superior Court of Pima County wherein they seek a declaratory judgment under A.R.S. § 12–1831 et seq., (1956) adjudicating the following sections of the Arizona Revised Statutes, relating to abortion, to be void for unconstitutionality under the constitutions of the United States and the State of Arizona:

"§ 13–211.  Definition; punishment

A person who provides, supplies or administers to a pregnant woman, or procures such woman to take any medicine, drugs or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless it is necessary to save her life, shall be punished by imprisonment in the state prison for not less than two years nor more than five years.

§ 13–212.  Soliciting abortion; punishment; exception

A woman who solicits from any person any medicine, drug or substance whatever, and takes it, or who submits to an operation, or to the use of any means whatever, with intent thereby to procure a miscarriage, unless it is necessary to preserve her life, shall be punished by imprisonment in the state prison for not less than one nor more than five years.

§ 13–213.  Advertising to produce abortion or prevent conception; punishment

A person who wilfully writes, composes or publishes a notice or advertisement of any medicine or means for producing or facilitating a miscarriage or abortion, or for prevention of conception, or who offers his services by a notice, advertisement or otherwise, to assist in the accomplishment of any such purposes, is guilty of a misdemeanor."

Respondents, Gary K. Nelson, Attorney General of the State of Arizona, and Rose Silver, County Attorney of Pima County, moved the court to dismiss the action for the reason that the complaint "does not set forth a justiciable controversy." The motion was argued to the Honorable Richard N. Roylston on September 9, 1971, and denied on the same date. Thereafter, the matter was tried on the merits to the Honorable Jack Marks, who, through a memorandum opinion dated April 5, 1972, dismissed the action for lack of a justiciable controversy. The memorandum opinion and order of dismissal was thereafter rescinded on April 12, 1972. On May 9, 1972, after petitioner Jane Roe had procured an out-of-state abortion, the April 5th order was reinstated and amended dismissing this cause because "the *complaint* does not state a justiciable controversy because the plaintiffs did not allege that they

. . . are being prosecuted for violation of A.R.S. §§ 13–211, 13–212, or 13–213 . . . or that the defendants . . . have threatened prosecution of the plaintiffs . . . for violation of [said statutes]." (Emphasis added)

In their petition filed in this court, petitioners complain that after the case was tried on the merits and submitted, the court dismissed it *ex mero motu* without notice to the parties. They contend that the dismissal was arbitrary and in excess of the court's jurisdiction in that the court failed to exercise discretion, as was its duty, to decide the case on the merits.

The Uniform Declaratory Judgments Act provides, *inter alia*:

"§ 12–1831. Scope

Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed . . . The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

§ 12–1832. Power to construe, etc.

Any person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder.

\*   \*   \*   \*   \*   \*

§ 12–1842. Construction

This article is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered."

The remedial purpose of the declaratory judgments act has been adverted to in Peterson v. Central Arizona Light & Power Co., 56 Ariz. 231, 107 P.2d 205 (1940) and Podol v. Jacobs, 65 Ariz. 50, 173 P.2d 758

(1946). But, even though the act is remedial and is to be liberally construed, it is well settled that a declaratory judgment must be based on an actual controversy which must be real and not theoretical. Moore v. Bolin, 70 Ariz. 354, 220 P.2d 850 (1950); Kleck v. Wayland, 53 Ariz. 432, 90 P.2d 179 (1939); Riley v. County of Cochise, 10 Ariz.App. 55, 455 P.2d 1005 (1969); Farmers Insurance Group v. Worth Insurance Co., 8 Ariz.App. 69, 443 P.2d 431 (1968); Iman v. Southern Pacific Co., 7 Ariz.App. 16, 435 P.2d 851 (1968). To vest the court with jurisdiction to render a judgment in a declaratory judgment action, the complaint must set forth sufficient facts to establish that there is a justiciable controversy. Maricopa Realty & Trust Co. v. VRD Farms, Inc., 10 Ariz. App. 524, 460 P.2d 195 (1969); Connolly v. Great Basin Insurance Company, 6 Ariz.App. 280, 431 P.2d 921 (1967). A "justiciable controversy" arises where adverse claims are asserted upon present existing facts, which have ripened for judicial determination. Manning v. Reilly, 2 Ariz.App. 310, 408 P.2d 414 (1965).

Since the trial court concluded that the petitioners had not alleged a justiciable controversy in their complaint, we direct our attention to the allegations set forth therein. The following portions of the complaint appear to be of particular significance:

### III.

"The clients of Plaintiff Planned Parenthood include both married and unmarried pregnant women; except for the risk of criminal prosecution under the aforementioned statutes, when medically justified Plaintiff Planned Parenthood would refer some of such clients to licensed physicians so that abortions could be performed on them to terminate pregnancies, even though such procedures were not necessary to save the lives of such pregnant women. Such clients include women who suffer or have suffered during pregnancy from

diseases such as rubella or other diseases which present a substantial risk that the fetus will be born with grave birth defects; such women also include women who are affected by or afflicted with diseases such as cerebral palsy or other diseases which would prevent them from adequately caring for the child after its birth. In addition, if not for the risk of criminal prosecution under the aforesaid statutes, where medically justified Plaintiff Planned Parenthood would offer its services by means of notices, advertisements, and otherwise to assist its clients in procuring abortions and preventing conception.

## IV.

The patients of all of plaintiff physicians from time to time include both married and unmarried women; except for the risk of criminal prosecution under the abortion statutes, where medically indicated the plaintiff physicians would perform or arrange for the performance of abortions on pregnant women, even though such procedures might not be necessary for the purpose of saving lives of such women. Such women include, but are not limited to, women who suffer or have suffered during pregnancy from diseases such as rubella and other diseases which present a substantial risk that the fetus will be born with grave birth defects, and women who are afflicted with diseases such as cerebral palsy or other diseases which would prevent them from adequately caring for the child after it is born.

## V.

Plaintiff Jane Doe[1] is an unmarried woman who is pregnant and has been advised by her physician that for sound medical reasons the pregnancy should be terminated by abortion, even though said abortion is not absolutely necessary to save the life of the Plaintiff Jane Doe. Except for the risk of criminal prosecu-

tion under the aforesaid criminal statutes, Plaintiff Jane Doe would be able to obtain such an abortion within the State of Arizona and would obtain such an abortion.

## VI.

Plaintiffs alleged that the aforesaid statutes, which are commonly known as the 'abortion statutes' deprive each, all, and everyone of the plaintiffs of the rights guaranteed to them by the Constitutions of the United States and of the State of Arizona; specifically, plaintiffs claim as follows:

(A) The abortion statutes in their present form are beyond the power of the state to enact in that the state has no compelling interest in the absolute prohibition of abortion, and the enactment of such statutes thus violates the Fourteenth Amendment to the Constitution of the United States and Art. 2, Sec. 4 of the Constitution of the State of Arizona since it deprives plaintiffs of liberty without due process of law.

(B) The aforesaid statutes are vague, ambiguous and uncertain on their face and as applied, and are thus invalid since they deprive the plaintiffs of their liberty without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States and in violation of Art. 2, Sec. 4 of the Constitution of the State of Arizona.

(C) That the rights of the various plaintiffs to privacy; family planning; to choice of medical treatment; to freedom to follow the dictates of their professional conscience; to speak, recommend, procure, and aid in the procuring of abortions where such are medically proper; to choose whether or not to bear children, are all guaranteed to the plaintiffs by the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the Constitution of the United States and by Art. 2, Sec. 2, 4, 6, 8, and 33 of the

1. Jane Roe was substituted for Jane Doe as noted earlier in this opinion.

Constitution of the State of Arizona, and insofar as said rights are abrogated or diminished by the aforesaid criminal statutes of this state, said statutes are void and unconstitutional.

(D) The enactment of said statutes constitutes a prohibition against the free exercise of religion and an establishment of religion, since the prohibition against abortions as contained in said statutes constitutes a violation of both liberty of conscience and the sincerely held and deep-seated religious beliefs of the plaintiffs and a great number of other Americans, all of which is contrary to the First and Fourteenth Amendments of the Constitution of the United States and to Art. 2, Sec. 12 of the Constitution of the State of Arizona."

The petitioners were permitted to amend the complaint to include an allegation that the State of Arizona, through its prosecuting authorities, intended to enforce the abortion statutes through appropriate action. The county attorney indicated on deposition that the statutes would be enforced as any other criminal statutes. Also, during oral argument, in response to questioning by the court, the deputy county attorney advised the court that the office of the County Attorney for Pima County will uphold the statutes and that prosecution is always a matter of proof.

■ In their complaint for declaratory relief, the petitioning physicians alleged that, but for the criminal statutes, they would perform abortions where medically indicated and where otherwise required for therapeutic purposes even though abortion might not be necessary to save the mother. The Planned Parenthood Center, Inc. has also shown a clear restriction upon their activities by the statutes.

Declaratory action has been held to be a proper remedy to test the validity of a criminal statute where it affects one in his trade, business or occupation. Sunshine Mining Co. v. Carver, 34 F.Supp. 274 (D. Idaho 1940); 2 W. Anderson, Actions for Declaratory Judgments § 624 (2d ed. 1951). In Anderson's work on declaratory judgments, the author observes:

"Where a statute clearly and immediately affects the property rights of the citizen, he has an immediate and present controversy with reference to the validity of such a statute, *without further subjecting himself to a criminal prosecution or other severe penalties provided by the statute* . . . ."[2] (Emphasis added) Id. § 623 at 1435.

See also Zeitlin v. Arnebergh, 59 Cal.2d 901, 31 Cal.Rptr. 800, 383 P.2d 152 (1963). Some courts take the position that a declaration as to criminal matters is generally inappropriate. See Annot., 10 A.L.R.3rd 727 § 3 (1966). However, other courts have taken a contrary view, i. e., that declaration is proper with reference to a criminal statute. See id. § 3(b). Arizona has been included in the latter category by reason of the court assuming jurisdiction to declare the rights of the parties where a planned parenthood committee was under threat of prosecution for disseminating birth control information. Planned Parenthood Committee, Inc. v. Maricopa County, 92 Ariz. 231, 375 P.2d 719 (1962).

■ To require statutory violation and exposure to grave legal sanctions; to force parties down the prosecution path, in effect compelling them to pull the trigger to discover if the gun is loaded, divests them of the forewarning which the law, through the Uniform Declaratory Judgments Act, has promised. Begrudging availability of the declaratory vehicle is inconsistent with the Act's expressed remedial tenor directed to the elimination of uncertainty and insecurity and the settlement of controversy. Whenever facts are present justifying prosecution, prosecution will serve to test

2. Regarding civil cases the Arizona Supreme Court has held it is not necessary that any breach should be first committed, any right invaded, or wrong done. Morton v. Pacific Construction Co., 36 Ariz. 97, 283 P. 281 (1929); Moore v. Bolin, 70 Ariz. 354, 220 P.2d 850 (1950).

the statute and tell the whole story. A declaratory judgment in such case is ordinarily as superfluous as medicine administered to a corpse. Violation of a criminal statute as a prerequisite to testing its validity invites disorder and chaos and subverts the very ends of law. The court will not indulge in the fomentation of lawlessness.

Even without the presence of a pregnant petitioner before the court, we find that a genuine and a justiciable controversy exists. We hold that in relation to the petitioners who are qualified medical practitioners (or specialists) and Planned Parenthood Center of Tucson, Inc., (which disseminates information only in relation to those who are qualified in the specialized field) that the complaint alleges a justiciable controversy.[3]

For the reasons herein stated, the trial court is directed to vacate the order of dismissal and proceed to a resolution of the case on its merits.

HOWARD, and STEVENS, JJ., concur.

---

[3]. We expressly do not hold that persons not professionally qualified and licensed could state a justiciable controversy. We have not examined a reporter's transcript of the trial and express no opinion as to the adequacy of the proof presented.