828 P.2d 1210

Thomas M. THOMAS and Karen L. Thomas, Plaintiffs–Appellants,

v.

CITY OF PHOENIX; Mayor Terry Goddard; William S. Parks, M.D.; Duane Pell; Paul Johnson; John B. Nelson; Howard Adams; Mary Rose Wilcox; Linda Nadolski; Calvin C. Goode, Defendants–Appellees.

No. 1 CA–CV 90–173.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 27, 1991.

Reconsideration Denied Oct. 16, 1992.

Review Denied May 5, 1992.

**70**

Kalish, Forrester & Torres, P.C. by Marc Kalish, M. Ellen Ridge, Phoenix, for plaintiffs-appellants.

Roderick G. McDougall, City Atty. by Edward P. Reeder, Asst. City Atty., Phoenix, for defendants-appellees.

OPINION

EHRLICH, Judge.

Thomas M. Thomas and Karen L. Thomas appeal from the trial court's denial of

their request for an award of attorneys' fees pursuant to 42 U.S.C. § 1988 and the dismissal of the remaining claims of their complaint as being moot. We reverse the denial of the requested fee award and remand the matter for a determination of the amount to be awarded. We affirm the dismissal of the remainder of the action as moot.

*Facts and Procedural History*

The Thomases have operated a cake-decorating business in their Phoenix home since 1985. In early 1987, the city zoning administrator cited the Thomases for a violation of the city's home occupation code. Phoenix City Code, Ch. V, § 500(C)(9). The Thomases then applied for use permits to allow traffic to their home related to their business, to allow commercial grade business equipment to be used in their home, and to allow more than 25% of the square footage of their home to be used for their business. The zoning administrator denied the three applications.

The Thomases appealed the permit denials relating to traffic and equipment to the board of adjustment.[1] The board initially upheld the decision, but upon rehearing, reversed the zoning administrator regarding both permits with the stipulation that the permit to allow business traffic to the home be approved for only one year.

Approximately a year later, a hearing on an extension of the use permit for business traffic was scheduled before the zoning administrator. At that time, the board explained that it had not meant to place a one-year limit on the use permit, but instead had intended to provide for a review after one year. The zoning administrator then referred the matter to the board for a hearing. It granted an indefinite extension of the use permit with various stipulations.

During the 1988 session, the Arizona legislature amended A.R.S. § 9–462.06 to change the appeal process for decisions of

1. They did not appeal the denial of the permit to use more than 25% of their home for the business because they had added to the living space of their home, making the portion of the home used for business less than 25% of the total square footage.

boards of adjustment in cities with populations of more than 100,000. The amendment was effective April 1, 1988. Before the amendment to § 9–462.06, a decision by a board of adjustment could be appealed only by special action filed in the superior court. The amendment added subsection (J), allowing appeals from boards of adjustment decisions to be filed with the legislative body of the municipality, e.g., the city council.

Pursuant to the amended statute, a neighbor of the Thomases filed an appeal with the Phoenix City Council from the board's decision granting the permit.

At the time the council heard the appeal, it had not yet adopted procedural rules for such appeals. After hearing unsworn testimony and apparently considering the matter de novo, the council reversed the board's decision.

The Thomases filed a complaint in superior court against the City of Phoenix and the individual council members, citing 42 U.S.C. § 1983,[2] A.R.S. § 9–462.06(K) and the rules of procedure for special actions as authority for the court's jurisdiction. They alleged that: (1) the amendment to § 9–462.06 per se and as applied violated the equal protection and due process clauses, among other provisions of the Arizona and United States Constitutions; (2) the council had no authority to consider the appeal from the board's decision; (3) the council engaged in improper ex parte communications regarding the appeal and failed to follow the open meeting laws; and (4) the council applied an incorrect standard of review and its decision to reverse the board's decision was arbitrary and capricious. Among the specific allegations were

that the council had not properly adopted any rules of procedure for the handling of appeals filed under § 9–462.06, that the council had used a standard of review that had allowed it to consider the matter de novo, and that papers filed with and reviewed by council members before the hearing were not served on the Thomases.

The Thomases sought a declaratory judgment that the amendments were unconstitutional, an injunction barring the city from applying the amendments if they were unconstitutional or barring the city from applying the amendments until the council adopted valid procedural rules, a judgment reinstating the decision of the board, and an award of their attorneys' fees and costs pursuant to 42 U.S.C. § 1988[3] and A.R.S. § 12–348.[4]

The trial court deferred judgment and on July 7, 1989, remanded the matter to the council for rehearing of the appeal from the board's decision. It articulated the issue before the council as whether the board's decision to issue a use permit to the Thomases to allow no more than ten vehicles a week to their home in connection with their business should be affirmed or reversed. It ordered each council member to state on the record the nature and content of any ex parte communication regarding the case and to consider disqualification if the communication had influenced the council member. The court also ordered the council to conduct the appeal in a manner designed to afford the parties due process.

At the time the trial court remanded the matter for rehearing, the council still had not formally adopted procedures for ap-

**2.** Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." "Person" has been defined as including cities and city officials. *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 663–701, 98 S.Ct. 2018, 2021–41, 56 L.Ed.2d 611 (1978). A violation of

§ 1983 may be addressed by state courts. *Martinez v. California*, 444 U.S. 277, 283 n. 7, 100 S.Ct. 553, 558 n. 7, 62 L.Ed.2d 481, reh. denied, 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606 (1980).

**3.** Section 1988 provides that in any action or proceeding to enforce a provision of § 1983, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs."

**4.** On appeal, the Thomases abandoned that portion of their request for fees based on § 12–348.

peals authorized by § 9–462.06(J). On January 11, 1989, the city planning commission had held a hearing on such proposed procedures and made a recommendation to the council. The council, however, did not adopt the procedures until October 11, 1989. The procedures adopted as an amendment to the zoning ordinance differed from those recommended by the city planning commission in two respects. The recommended procedures proposed that new evidence not included in the record before the board could be submitted to the council for consideration. The adopted version states that the council "shall review the testimony and exhibits presented to the board of adjustment; no new evidence or testimony shall be received." The adopted version also adds that "council members will not receive any verbal or written communication on these appeals. A city council member who engages in verbal communications or reviews written communications, other than allowed by this section, shall be disqualified to participate in the appeal." The proposed procedures did not contain a comparable provision.

Before the rehearing, the council issued a formal agenda, stating that: (1) at the beginning of the hearing, each council member would recount on the record the nature and content of any ex parte communication regarding the merits of the case and that if the communication had influenced the member, the member would consider disqualification; (2) the council would review the testimony and exhibits presented to the board and consider written summaries of each party's position; (3) no new evidence or testimony would be received by the council; and (4) the question to be resolved by the council would be whether a maximum of ten vehicle trips a week to the Thomases' home related to their business would contribute in any measurable way to the deterioration of the neighborhood. Upon rehearing, the council affirmed the board's decision.

The case then returned to the trial court where the Thomases filed a motion for summary judgment on their constitutional claims and 42 U.S.C. § 1983, and for an award of attorneys' fees and costs in accordance with 42 U.S.C. § 1988. They argued that they had obtained the relief they sought; the trial court had determined that the city had to rehear the appeal due to numerous deficiencies in the first hearing and the council had affirmed the board's decision as the result. The Thomases indicated that if the court awarded them fees and costs, they would agree to voluntarily dismiss the remaining claims against the city and council members.

The trial court awarded the Thomases their costs, but denied their application for attorneys' fees.

> [T]he procedural changes sought by the plaintiffs were neither the result of their lawsuit against the defendants, nor was the adoption by the City Council of the procedural changes required by the plaintiffs' lawsuit. Therefore, the plaintiffs have failed to demonstrate that their lawsuit is linked causally to securing the procedural changes and the conduct of the defendants in adopting the procedural changes was in response to the lawsuit.

The court also dismissed the action because all of the Thomases' claims were moot. The Thomases then appealed the denial of their request for attorneys' fees and the dismissal of their claims.

## Attorneys' Fees Under 42 U.S.C. § 1988

The first issue raised by the Thomases is whether the trial court erred in finding that the council's reversal of its prior decision and its adoption of procedural changes were neither the result of nor required by the Thomases' lawsuit, and thus the Thomases were not entitled to an award of fees under 42 U.S.C. § 1988. It is on this basis that we reverse the trial court.

■■■ To qualify as the prevailing party under § 1988, the plaintiff must establish a clear, causal relationship between the litigation and the practical outcome realized, *American Constitutional Party v. Munro*, 650 F.2d 184, 188 (9th Cir.1981), showing that (1) the action was causally linked to the relief obtained, and (2) the defendant's conduct in response to the lawsuit

was required by § 1983. *Goichman v. City of Aspen*, 859 F.2d 1466, 1471 (10th Cir.1988); *J & J Anderson, Inc. v. Town of Erie*, 767 F.2d 1469, 1475 (10th Cir.1985). A prevailing plaintiff should recover attorneys' fees unless special circumstances render an award unjust. *Kentucky v. Graham*, 473 U.S. 159, 164, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985); *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983); *Teitelbaum v. Sorenson*, 648 F.2d 1248, 1249 (9th Cir.1981); *Iranian Students Ass'n v. Sawyer*, 639 F.2d 1160, 1162–63 (5th Cir. 1981); *see also J & J Anderson*, 767 F.2d at 1474 (trial court discretion in denying § 1988 attorneys' fees to prevailing parties "quite narrow").

█ The fact that the plaintiff prevailed on grounds other than § 1983 does not preclude an award of fees under § 1988 if § 1983 would have provided an appropriate basis for relief. *J & J Anderson*, 767 F.2d at 1473, 1474 (citing *Consolidated Freightways Corp. of Delaware v. Kassel*, 730 F.2d 1139, 1141–42 (8th Cir.), cert. denied, 469 U.S. 834, 105 S.Ct. 126, 83 L.Ed.2d 68 (1984)). Accordingly, the trial court's discretion essentially is limited to determining whether the plaintiff was the prevailing party, whether § 1983 was an appropriate basis for relief, and whether there are any special circumstances that would render an award unjust. *Graham*, 473 U.S. at 164, 105 S.Ct. at 3104; *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943; *Teitelbaum*, 648 F.2d at 1249; *Iranian Students*, 639 F.2d at 1162–63. If the court finds that the answers to the first two of these questions is yes and to the last, no, fees will be awarded under § 1988. *Id.* The question then is whether all of the fees generated led to the plaintiff's successful result. *See Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943.

█ Under these standards, we find that the trial court erred in denying the Thomases' application for fees. First, the Thomases were the prevailing party. The primary relief that they sought was reinstatement of the board's decision. Although the court did not itself reinstate the decision, the effect of its order remanding the matter to the council for rehearing was that the council reheard the matter under new procedural rules complying with the requisites of due process and affirmed the board's decision. Thus, the Thomases achieved their desired relief as a result of court action even though they did not obtain a judgment on the merits.

Further, the relief the Thomases obtained was causally related to their lawsuit. There is no reason to believe that the city council would have reconsidered the appeal if the court had not ordered it to do so. The council's rehearing of the appeal and subsequent affirmation of the board's decision would not have happened but for the trial court's order remanding the case to the council with instructions to conduct the rehearing in a manner that afforded due process to the parties.

Additionally, the city's conduct in response to the lawsuit was required by law. The trial court found that certain aspects of the first hearing violated the Thomases' due process rights. The court ordered the council to conduct the appeal in a manner calculated to give the parties due process, a requirement of law. Consequently, the Thomases satisfied the test used to determine whether a plaintiff is the prevailing party when there has been no judgment on the merits.

Second, § 1983 was an appropriate basis for relief. Although the Thomases did not obtain formal judgment from the trial court based on § 1983, it is clear from the court's minute entry that it believed that the city had violated the Thomases' due process rights in the manner in which it conducted the hearing on the appeal from the board's decision. Thus, § 1983 would have been an appropriate basis for relief if the trial court had reached the merits of the action.

Third, the trial court did not find any special circumstances that would render an award of fees unjust.

The City argued to the trial court that the adoption of procedures for appeals to the council from board decisions was not causally related to the Thomases' lawsuit and that the Thomases consequently were

not entitled to an award of attorneys' fees. While the trial court apparently accepted this view, we do not find anything in § 1988 nor in the case law applying it that indicates that an award of attorneys' fees is available only if the lawsuit prompted or caused a procedural change. Thus, it was not necessary for the adoption of the procedures to be causally related to the lawsuit for the Thomases to be entitled to an award of fees.[5] The Thomases were the prevailing parties in the trial court because they obtained the primary relief they sought, relief which they otherwise would not have obtained. On that basis, they are entitled to an award of attorneys' fees incurred in obtaining the council's affirmance of the board's decision.

We therefore find that the trial court erred in denying the Thomases' application for an award of attorneys' fees. Upon remand, the trial court is to determine what proportion of the Thomases' fees was expended to obtain the affirmance of the board's decision.

### Dismissal for Mootness

The second issue raised by the Thomases is whether the trial court correctly dismissed their unlitigated and undecided claims as moot. We believe that it did.

■ There must be a justiciable issue between the parties before a declaratory judgment will be granted. *Arizona State Board of Directors for Junior Colleges v. Phoenix Union High School District*, 102 Ariz. 69, 73, 424 P.2d 819, 823 (1967). Courts will not hear cases that seek declaratory judgments that are advisory or answer moot or abstract questions. *Id.* Declaratory relief should be based on an existing state of facts, not facts that may or may not arise in the future. *Id.* An exception is that a court may decide a moot question or abstract proposition if the issue is one of great "public importance" or one that is "capable of repetition yet evading review." *Contempo-Tempe Mobile Home*

*Owners Ass'n v. Steinert,* 144 Ariz. 227, 230, 696 P.2d 1376, 1379 (App.1985).

The cases on which the Thomases rely to argue that their claims are not moot are distinguishable from their case. In *Arizona Fence Contractors Ass'n v. City of Phoenix Advisory & Appeals Board,* 7 Ariz.App. 129, 130, 436 P.2d 641, 642 (1968), the court found that a justiciable controversy existed when an association of contractors who had built and would continue to build fences challenged the constitutionality of an ordinance requiring fences to be of a certain strength. In that case, the contractors were continually erecting fences, and they had to know whether the ordinance was valid so that they would know the standards for the fences they constructed. Thus, the court was presented with a justiciable controversy even though it appeared that the city had not yet cited a contractor for violation of the ordinance.

■ The Thomases' desire to know whether A.R.S. § 9–462.06 is constitutional is too abstract. For this statute to affect them again, a complaint would have to be filed against their home business, the losing party before the zoning administrator would have to seek a hearing before the board, and the losing party before the board would have to appeal to the council. If the Thomases lost at the board level, § 9–462.06 still would allow them to file a special action directly with the superior court without appealing to the council. Thus, they have no immediate need to determine whether the statute is constitutional.

This situation is completely unlike that in *Planned Parenthood Center of Tucson, Inc. v. Marks,* 17 Ariz.App. 308, 497 P.2d 534 (1972), a case in which a criminal statute was challenged. A person does not have to subject himself to criminal prosecution or other severe penalties before being able to test the validity of a criminal statute. *Id.* at 313, 497 P.2d at 539.

5. Although not definitive, the chronology of events surrounding a procedural change is an important factor to consider in determining what prompted or caused the change. *Braaf-*

*ladt v. Board of Governors of Oregon State Bar Ass'n,* 778 F.2d 1442, 1444 (9th Cir.1985); *Iranian Students,* 639 F.2d at 1163; *Nadeau v. Helgemoe,* 581 F.2d 275, 281 (1st Cir.1978).

In addition, although the application of the statute is capable of repetition, there is no likelihood that such application would evade review. Further, the challenged portion of the statute, which allows an appeal to a city council from a board of adjustment decision, does not appear to constitute a matter of sufficiently great public importance to warrant use of the exception.

Once the Thomases' use permit was reinstated, which was the primary relief they sought, the question of the constitutionality of the amendment to A.R.S. § 9–462.06 became moot, and the trial court properly dismissed the remainder of the action.

### Attorneys' Fees on Appeal

The Thomases request an award of attorneys' fees on appeal pursuant to 42 U.S.C. § 1988 and A.R.S. § 12–349. We do not believe that the City of Phoenix's actions were without substantial justification or solely or primarily for delay or harassment, and thus we decline to award fees under § 12–349. However, fees may be awarded under § 1988 for an appeal, *see Riddell v. National Democratic Party*, 624 F.2d 539, 547 (5th Cir.1980), and we award the Thomases their fees on that basis. The Thomases may establish the amount of their award by complying with Rule 21, Arizona Rules of Civil Appellate Procedure.

KLEINSCHMIDT, P.J., and GRANT, J., concur.